# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### July 23, 2013 Session

## TORREY L. FRAZIER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Roane County**
**No. 11903      E. Eugene Eblen, Judge**

---

**No. E2012-01751-CCA-R3-PC - Filed November 6, 2013**

---

The Petitioner, Torrey L. Frazier, appeals the Roane County Criminal Court's dismissal of his petition for post-conviction relief from his conviction of second degree murder and resulting twenty-two-year sentence. On appeal, the Petitioner contends that he received the ineffective assistance of trial counsel. Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and JEFFREY S. BIVINS, JJ., joined.

Gregory P. Isaacs and Andrea B. Mohr, Knoxville, Tennessee, for the appellant, Torrey L. Frazier.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; and Russell Johnson, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The facts of this case have been previously summarized as follows:

> At approximately 1:00 a.m. on December 28, 1997, Torrey Lyonel Frazier (the "petitioner") shot and killed the victim, Anthony Eugene Thomas (the "victim"), at a place known as Skinny Miller's in Roane County. The petitioner fired multiple shots at close range, one of which penetrated the

stomach, right lung, and aorta of the victim. The petitioner, charged with first-degree murder, claimed self-defense. He asserted that he had been threatened by the victim as a result of a prior incident and contended that, just prior to firing his gun, he had seen the victim reach for an object with a black handle in the front portion of his pants. [Two attorneys] were appointed as counsel. At trial, the police offered testimony that they had found no weapons during their investigation which might have supported the petitioner's claim. Further, a practical nurse, who had performed cardiopulmonary resuscitation on the victim shortly after the shooting, had loosened the victim's clothing at the scene and had not observed any weapon in his possession. The jury returned a verdict of second-degree murder, and the trial court imposed a sentence of twenty-two years.

Frazier v. State, 303 S.W.3d 674, 677 (Tenn. 2010).

On direct appeal of his conviction to this court, the Petitioner argued that the evidence was insufficient to support the conviction, that the trial court erred by admitting into evidence a Tech-9 handgun that was not associated with the crime, that the trial court erred by allowing the State to question a defense witness about a pending charge for statutory rape, and that the trial court imposed an excessive sentence. State v. Torrey L. Frazier, No. E2000-01364-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 956, at **1-2 (Knoxville, Dec. 19, 2001). This court affirmed the conviction and sentence. Id. at *2. The Petitioner did not file an application for permission to appeal to our supreme court.

The Petitioner retained counsel, and on July 21, 2004, counsel filed an untimely petition for post-conviction relief. In the petition, the Petitioner alleged the ineffective assistance of trial counsel, including that trial counsel were ineffective because they failed to notify him about the results of his direct appeal, failed to withdraw from his case pursuant to Tennessee Supreme Court Rule 14, and failed to file an application for permission to appeal pursuant to Tennessee Rule of Appellate Procedure 11. Although retained counsel filed the petition outside the statute of limitations, the State conceded that the Petitioner was entitled to a delayed application for permission to appeal to our supreme court. The trial court granted the delayed appeal and stayed its consideration of the Petitioner's remaining post-conviction claims. The supreme court denied the application on February 21, 2006.

Subsequently, the trial court held an evidentiary hearing on the Petitioner's remaining post-conviction issues. The Petitioner, who was still being represented by retained counsel, argued that he received the ineffective assistance of trial counsel because they failed to

request a jury instruction on second-degree murder as a "result of conduct" offense, failed to raise the instruction issue on direct appeal, and failed to raise an issue of alleged juror bias in the motion for new trial. Torrey Lyonel Frazier v. State, No. E2007-02518-CCA-R3-PC, 2009 Tenn. Crim. App. LEXIS 242, at *2 (Knoxville, Mar. 25, 2009). The post-conviction court denied the petition.

The Petitioner, still represented by retained counsel, appealed to this court, and this court affirmed the trial court's denial of the petition. Id. Thereafter, the Petitioner filed a pro se application for permission to appeal to our supreme court. As that court explained, the Petitioner

> argu[ed] for the first time that the trial court had committed error by failing to sua sponte address a conflict of interest issue. The petitioner claimed that because [retained counsel] had represented him in the delayed appeal, [retained counsel] should have been disqualified in the subsequent post-conviction proceeding and appeal. He contended that he should have been advised of the potential conflict of interest in advance of the evidentiary hearing and given the opportunity to either waive the issue or insist upon substitution of counsel.

Frazier, 303 S.W.3d at 678. Retained counsel withdrew from the Petitioner's case, and our supreme court granted permission to appeal in order to address the conflict of interest issue. In its ruling, the supreme court held as follows:

> The statute authorizing the appointment of counsel in a post-conviction proceeding implicitly includes the right to conflict-free counsel. When a conflict of interest is apparent, the trial court has the duty to conduct an independent inquiry prior to the evidentiary hearing. The trial court did not do so in this instance. The cause is remanded, therefore, for a determination of whether the petitioner, through his communications with [retained counsel], knowingly and voluntarily waived the conflict of interest. If not, the petitioner is entitled to conflict-free counsel throughout the post-conviction proceedings.

Id. at 685.

On remand, the trial court held an evidentiary hearing, determined that the Petitioner

did not knowingly and voluntarily waive retained counsel's conflict of interest, and scheduled a new post-conviction hearing. Newly appointed post-conviction counsel filed an amended petition, alleging that the Petitioner received the ineffective assistance of trial counsel because counsel failed to conduct a reasonable investigation of the case, failed to file necessary pretrial motions, failed to engage in plea negotiations with the State, failed to interview and prepare witnesses, failed to advise the Petitioner about important sentencing issues, failed to address properly the fact that a biased female juror was allowed to remain on the jury, failed to object to the medical examiner's trial testimony, failed to object to improper lay opinion testimony, failed to object to the prosecutor's placing a Tech-9 handgun in the Petitioner's hand at trial and having him demonstrate the victim's actions before the shooting, and failed to request a jury instruction on second degree murder as a "result-of-conduct" offense. The amended petition also alleged that the Petitioner received the ineffective assistance of counsel on direct appeal because retained counsel failed to cite to legal authority in the Rule 11 application to our supreme court, met with the Petitioner only one time outside of court, and did not take or return the Petitioner's telephone calls.

At the post-conviction evidentiary hearing, co-counsel at trial testified that he became licensed to practice law in 1978. At the time of the Petitioner's trial in July 1999, co-counsel had tried more than ten homicide cases. Co-counsel said that in April 2005, his law license was suspended due to an "improper" order he filed. He acknowledged that by "improper," he meant the order made misrepresentations to the court. Prior to the suspension, co-counsel had practiced criminal, domestic, and property law. Co-counsel said he currently was employed by a Ford dealership in Wartburg.

Co-counsel testified that the trial court appointed him to assist lead counsel with the Petitioner's first degree murder case because lead counsel was inexperienced. Co-counsel and lead counsel hired an investigator, went to the scene of the shooting, and met several times with the Petitioner. Co-counsel remembered meeting with the Petitioner twice before trial. Co-counsel said that during the first meeting, he and lead counsel talked with the Petitioner about the facts of the case, "hearing it from his own mouth." They also met with the Petitioner the day before trial. Co-counsel acknowledged that he may have filed a discovery motion, a motion requesting an investigator, and a motion to compel the production of witnesses' arrest statements. Co-counsel did not remember if he filed a motion to suppress the Petitioner's statement to police, a motion to prohibit the State from questioning the Petitioner about prior bad acts, or a motion to prohibit the State from impeaching the Petitioner with prior convictions. He said he did not know why he would have failed to file those pretrial motions.

Co-counsel testified that he did not remember how many hours he worked on the Petitioner's case but that he worked on the case more than two hours. Co-counsel voir dired

potential jurors. He said that during voir dire, the parties discovered that one of the potential jurors had "some type of involvement" with defense witness Terrell Gordon and that the trial court removed the potential juror. Post-conviction counsel asked co-counsel to read a portion of the trial transcript. Co-counsel acknowledged that according to the transcript, the individual at issue served as a juror during the trial. Co-counsel said that "[t]he record is what it is" but that "[m]y recollection is this juror was let go before the case was even tried. . . . I have no reason to dispute that the record is not correct. But this is my memory at this time." He acknowledged that the individual's having served on the jury would have been a "big problem." Co-counsel filed the motion for new trial in this case but did not raise the juror bias issue. Co-counsel said he did not remember the prosecutor's handing the Petitioner a Tech-9 during the trial and having the Petitioner demonstrate the victim's actions before the shooting. He said that he normally tried to negotiate plea agreements for his clients but that he did not remember if he did so in this case. Co-counsel also did not remember explaining the Petitioner's potential sentence to him.

On cross-examination, co-counsel testified that the defense raised the issue of self-defense at trial. Co-counsel reiterated that he thought the juror bias issue came up during voir dire, not during the trial. However, on redirect examination, he testified that "I could very well be wrong."

Lead counsel testified that he had been an attorney since 1998. He said that, at some point, he got into "a little bit of trouble" with the Board of Professional Responsibility due to an addiction to prescription pain medication and "ended up serving a little six month hiatus." In 1999, the trial court appointed lead counsel to represent the Petitioner and appointed co-counsel to assist lead counsel. Before trial, lead counsel met with the Petitioner, who was on bond, and two witnesses to the shooting. The meeting occurred at the Petitioner's home, and co-counsel was not present. Lead counsel said that he also may have met with the Petitioner in lead counsel's office and that he and co-counsel met with the Petitioner at least one time together. The trial court appointed an investigator, and the investigator also met with witnesses.

Lead counsel acknowledged that he may not have filed a motion to suppress the Petitioner's statement to police or motions to prohibit the State from questioning the Petitioner about prior bad acts or convictions. He stated that "if I had [the Petitioner's] case to try today, after 13 - 12 to 13 years of experience, I would have done a lot of things differently." Regarding plea negotiations, lead counsel said that "it seems like we talked about some pleading to a second degree . . . and I, I think were trying to get them to offer some manslaughter charge." However, lead counsel could not remember if the State made a plea offer. He said that he remembered "some reenactment" during the trial but that he did not remember the prosecutor asking the Petitioner to put the Tech-9 in the Petitioner's pants.

He said that the Tech-9 was "a pretty substantial issue" and that the defense probably should have objected to the reenactment. He said that he did not remember an issue involving a biased juror and that the Petitioner's case was the first and last homicide case he tried.

Rosetta Harkeness, the Petitioner's mother, testified that she attended the Petitioner's trial and observed a juror named "Ms. Samples." Harkeness said she did not know Samples personally but that defense witness Terrell Gordon told Harkeness that he had gotten into a prior altercation with Samples's son and that he and Samples's son were scheduled to go to trial over the altercation. Harkeness told trial counsel about the problem, but they told her not to worry about it. During the trial, Harkeness saw Samples talking with other jurors in the hallway during breaks. She also saw Samples go into the jury room with the other jurors. On cross-examination, Harkeness testified that she did not hear what Samples said to the other jurors.

The Petitioner testified that he met with lead counsel one time at the Petitioner's home the night before trial. The meeting lasted thirty to forty minutes, and witnesses Terrell Gordon and Christopher Williams also were present. During the meeting, lead counsel talked with Gordon and Williams and told the Petitioner that "we was going for self defense." The Petitioner did not meet with lead counsel again, never met with an investigator, and did not meet co-counsel until the morning of trial. The Petitioner said that during the trial, he told counsel about juror Samples's possible bias, but counsel told him that "she got off and we got the case beat so everything's okay." Also during the trial, the State forced the Petitioner to use a Tech-9 in a reenactment. The Petitioner said lead counsel "tried to [object to the reenactment,] but they let it go." Trial counsel told the Petitioner that he needed to testify, but they did not prepare him for cross-examination. Counsel never gave the Petitioner a copy of discovery or discussed possible sentencing issues with him.

On cross-examination, the Petitioner testified that after he was charged with murder in this case, he pled guilty to a drug charge and received an eight-year sentence to be served on community corrections. He said that trial counsel were lying about the number of times they met with him, that he was only twenty-one years old at the time of trial, and that he had not wanted to testify.

In a written order, the post-conviction court denied the petition for post-conviction relief. Regarding the Petitioner's claims that trial counsel failed to investigate his case and failed to investigate witnesses, the court accredited counsels' testimony that the trial court appointed an investigator to assist the defense and lead counsel's testimony that he personally interviewed witnesses at the Petitioner's home. The court found that the Petitioner failed to show any prejudice due to counsels' failure to interview a particular witness. As to counsels' failure to file necessary pretrial motions, the court found that "there was no pretrial motion

-6-

suggested by the petitioner based upon the trial record, that should have been filed but was not to the demonstrable prejudice of the Petitioner." Regarding counsels' failure to engage in plea negotiations, the post-conviction court stated that lead counsel and co-counsel both testified that they would have been open to plea offers by the State but that they did not remember the State's making an offer. The court also addressed the Petitioner's claim that he had not wanted to testify at trial, stating, "The Court finds at this juncture that this claim is self-serving and unsupported by any corroborative evidence."

Regarding possible bias by juror Samples, the court found that the Petitioner again failed to demonstrate prejudice because "[t]he record disclosed that this juror was in fact excused from the jury panel by the Court before actual deliberations were engaged in by the impaneled jury, and no other showing that she engaged in any improper communications with other jurors before her discharge from service." Finally, as to trial counsels' failure to object to lay and expert opinion testimony, the post-conviction court found that the Petitioner failed to make any showing as to why the testimony was improper or prejudicial. Thus, the post-conviction court denied the petition for post-conviction relief.

## II. Analysis

On appeal, the Petitioner maintains that he is entitled to post-conviction relief because trial counsel failed to address at trial the issue regarding juror Samples, failed to conduct a reasonable investigation of his case, failed to interview and prepare important witnesses for trial, failed to file necessary pretrial motions, failed to engage in plea negotiations with the State, failed to advise him regarding important sentencing issues, failed to object to the prosecutor's placing the Tech-9 in his hand and having him demonstrate the victim's actions before the shooting, failed to raise timely objections to lay opinion testimony by a police officer and object to expert opinion testimony by the medical examiner, failed to request a jury instruction on second degree murder as a "result-of-conduct" offense, and failed to raise the issue regarding the instruction on direct appeal.

To be successful in a claim for post-conviction relief, a petitioner must prove factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal

unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

A. Biased Juror

The Petitioner contends that he is entitled to post-conviction relief because trial counsel failed to address during the trial the issue of a biased juror being allowed to remain on the jury. The State argues that the Petitioner has not demonstrated prejudice because the record shows that the juror was dismissed prior to jury deliberations. We conclude that the Petitioner is not entitled to relief.

The trial record reflects that after the State rested its case-in-chief, the trial court held a bench conference and informed the parties that one of the jurors, "Ms. Samples," had informed the court that she knew one of the witnesses, Terrell Gordon. During the

conference, Samples said to the parties, "I don't know Terrell Gordon, and you all didn't mention his name. But my husband has a case where my little boy, over two years ago at the ball game . . . , [accidentally] bumped into him, and Terrell Gordon turned around and busted his nose." Defense counsel advised the court that it was going to call Gordon as a witness during its case-in-chief, and the trial court informed Samples, "You need to look at his testimony and judge it the same as the others." Samples replied, "Well, I mean, I can be honest, but I wanted to be fair and say, because his name hasn't been mentioned." The trial court told Samples that "it's not anything to worry about." The bench conference concluded, and the trial court instructed the jurors to go into the jury room.

When trial resumed, six witnesses, including Gordon, testified in the Petitioner's case-in-chief, and one witness testified for the State on rebuttal. At the close of all the proof, a bench conference occurred during which the State asked the trial court, "[D]o we need to address the juror issue, about dropping that juror? We need something on record that you object or don't object to her being a juror." The State also said, "I don't know what she's going to say in the jury room about him. And I don't want any appeal issues." The State recommended that Samples be excused from the jury, the trial court agreed, and lead counsel stated, "I think that's probably the safest thing."

The Petitioner contends that trial counsel were ineffective because Samples was not removed from the jury until the close of all the proof, which gave her the opportunity to make prejudicial remarks to other jurors regarding her knowledge of Gordon and the facts surrounding his assault of her son. However, the Petitioner did not call Samples or any of the jurors who deliberated on his case to testify at the evidentiary hearing to show that Samples tainted the jury with improper comments about Gordon. Thus, we agree with the post-conviction court that the Petitioner has failed to show that he was prejudiced by any deficiency.

B. Failure to Investigate Case and Interview Witnesses

Next, the Petitioner claims that he received the ineffective assistance of counsel because trial counsel failed to investigate the facts of his case and failed to interview important witnesses. However, the post-conviction court accredited lead counsel's testimony that he met with the Petitioner and interviewed witnesses. We note that the Petitioner also testified that lead counsel interviewed two defense witnesses. The Petitioner has failed to explain what more counsel should have done to investigate his case, has not given the names of any other witnesses counsel should have interviewed, and did not present those "important" witnesses at the hearing. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State,

794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on any benefit these witnesses would have offered to the petitioner's case, nor may we guess as to what evidence further investigation may have uncovered. Id.

### C. Failure to Engage in Plea Negotiations

As for the Petitioner's claim that counsel failed to engage in plea negotiations with the State, as the post-conviction court found, nothing indicates that the State made a plea offer to the defense or was even willing to negotiate with trial counsel. In any event, lead counsel testified that there may have been some discussions about a guilty plea to second degree murder or manslaughter, and the jury convicted the Petitioner of the former. Thus, the Petitioner has failed to show that he was prejudiced by trial counsels' failure to enter into plea negotiations.

### D. Failure to File Pretrial Motions

The Petitioner claims that trial counsel were ineffective for failing to file pretrial motions. First, the Petitioner argues that counsel should have filed a motion to exclude evidence of his prior drug convictions pursuant to Rule 404(b), Tennessee Rules of Evidence. The trial transcript reflects that during the Petitioner's direct examination, lead counsel asked if he had been convicted of a prior felony and that the Petitioner said he had been convicted of selling and delivering cocaine. On cross-examination, the State asked if he actually had been convicted of three drug offenses, and the Petitioner said yes. Thus, the record reveals that it was the Petitioner's direct testimony that triggered the State's questioning about his prior convictions.

In a related argument, the Petitioner contends that defense counsel's failure to file a similar motion regarding Terrell Gordon resulted in the State's improperly questioning Gordon about a pending statutory rape charge. In this court's opinion of the Petitioner's direct appeal of his convictions, though, this court found that while the State's questioning of Gordon was improper pursuant to Tennessee Rule of Evidence 608(b), it was also harmless. Torrey L. Frazier, No. E2000-01364-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 956, at **21-22. Therefore, the Petitioner has failed to demonstrate that he was prejudiced by counsels' failure to file the motion.

The Petitioner also claims that counsel were ineffective for failing to file a motion to suppress his statement to police because he gave the statement without the assistance of counsel. Our review of the trial transcript shows that Officer Chuck Moore testified that he interviewed the Petitioner several days after the shooting, that he read Miranda warnings to the Petitioner before the interview, and that the Petitioner agreed to waive his rights and

-10-

signed a waiver of rights form. The Petitioner did not testify to the contrary at the evidentiary hearing, and he has offered no other basis that would have supported a motion to suppress his statement.

Finally, the Petitioner contends that defense counsel should have filed a motion to suppress various unsigned witness statements. However, he has not explained how that motion would have been successful or changed the outcome of his case.

### E. Failure to Advise the Petitioner about Important Sentencing Considerations

Next, the Petitioner contends that trial counsel were ineffective for failing to advise him about important sentencing issues. Specifically, he contends that he did not learn until after his sentencing hearing that he would have to serve 100% of his twenty-two year sentence. The Petitioner notes that at his sentencing hearing, the trial court stated that it was sentencing him as a Range I offender; therefore, he thought he would have to serve only thirty percent of his sentence. However, second degree murder is considered a violent offense for which a defendant is required by statute to serve 100% of the sentence. See Tenn. Code Ann. § 40-35-501(i)(1), (2)(B). The Petitioner has failed to explain how he was prejudiced by trial counsels' failure to advise him of that fact.

### F. Failure to Advise Petitioner About His Option to Testify

The Petitioner contends that he "was not given sufficient opportunity after consultation with counsel to consider whether he wished to testify." However, the post-conviction court discredited the Petitioner's claim during the evidentiary hearing that he did not want to testify at trial, and nothing preponderates against the finding of the trial court.

### G. Failure to Object Timely to Reenactment and Use of Tech-9 During Reenactment

The Petitioner contends that trial counsel were ineffective for failing to make a timely objection when the prosecutor placed a Tech-9 handgun, which was not connected to the case, in the Petitioner's hand and had the Petitioner demonstrate the victim's actions before the shooting. The Petitioner contends that "[t]he prosecution laid no foundation for the presentation of this evidence prior to asking [the Petitioner] . . . to conduct a physical demonstration with a large firearm that was not connected to the offense" and that the evidence was highly prejudicial and inflammatory. We conclude that the Petitioner is not entitled to relief on this issue.

The trial transcript reflects that during the Petitioner's direct testimony, lead counsel told the Petitioner to stand up, pretend to be the victim, and demonstrate for the jury how the

-11-

victim reached into his pants for the Tech-9. On cross-examination, the State showed the Tech-9, which had been introduced into evidence for identification purposes only, to the Petitioner and asked him to show the jury how the victim had the gun "stuff[ed]" down the victim's pants. The Petitioner did as the State requested, and the State moved that the gun be introduced into evidence and passed to the jury. At that point, lead counsel objected, stating, "Your Honor, the witness has not testified that this was the gun that he saw that night." The trial court stated that "[t]his is not introduced as the gun that was there; just as a tech nine" and overruled the objection.

This court addressed this issue on direct appeal, explaining,

> In the instant case [Terrell] Gordon, the defendant's first witness, alleged that [Quincy Willis, an associate of the victim,] had handed the victim a weapon outside of Skinny Miller's. Gordon added that the weapon had looked "like a tech-nine or something." Defense counsel then began asking questions about the size of a tech-nine and whether the victim's coat had been large enough to conceal a weapon of this type. Furthermore, defense counsel returned to this topic on re-direct eliciting more specific testimony concerning the victim's hiding of the weapon. According to Gordon he saw the victim place the weapon in the back of the victim's pants under the aforementioned jacket. This witness added that a tech-nine was not too big to carry in that manner. In view of this line of questioning, the defendant opened the door and made the tech-nine relevant; thus, this contention lacks merit.

Torrey L. Frazier, No. E2000-01364-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 956, at **14-15. In a footnote to the paragraph, this court noted,

> During cross-examination of the defendant, the prosecution produced a tech-nine. Since the defendant claimed to have seen the handle of a weapon in the victim's pants, the State asked the defendant to place the tech-nine into his pants and to draw the weapon. Through this exchange the defense raised no objection. Nevertheless, when the State asked that the weapon be passed to the jury, the defense objected because the defendant himself had not specifically claimed that a tech-nine was involved. Later the defense objected once more, this time contesting the size of a clip mentioned by the State. Though the trial court

-12-

> overruled both objections, it did so in the latter instance "with the instruction to the jury that this is not alleged to be the gun that was there. We're merely talking about a type of weapon."

Id. at *15 n.10.

Thus, as this court stated, the Tech-9 was relevant at trial. Moreover, although the Tech-9 used during the demonstration was not the actual weapon alleged to have been present during the crime, the trial court instructed the jury to that fact. As to the prejudicial effect of the reenactment itself, whether the victim was able to conceal a gun the size of a Tech-9 in his pants was highly relevant to the Petitioner's claim of self-defense. Therefore, we see nothing improper about the State's asking the Petitioner to demonstrate for the jury how the gun was concealed in the victim's pants. See Tenn. R. Evid. 403 (stating that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice). The Petitioner had failed to demonstrate that counsel rendered deficient performance or that he was prejudiced by any deficiency.

### G. Failure to Object Timely to Lay Opinion Testimony

The Petitioner contends that he received the ineffective assistance of counsel because trial counsel allowed Officer Moore to give improper lay opinion testimony about the Tech-9. However, the Petitioner has failed to explain how the officer's testimony was improper pursuant to Tennessee Rule of Evidence 701, which specifically governs the admission of opinion testimony by a lay witness. Therefore, he is not entitled to relief.

### H. Failure to Object to Medical Examiner's Testimony

The Petitioner contends that trial counsel were ineffective for failing to object to medical examiner Charles Harlan's testimony about the victim's cause of death. The Petitioner claims that Harlan was not qualified to testify because his medical license was revoked in May 2005. The Petitioner contends that "[u]pon information and belief, Dr. Harlan came under investigations for allegations of misconduct as early as 1995" and that counsel should have learned about the allegations before the Petitioner's trial so that counsel could have cross-examined Harlan about the allegations. We disagree with the Petitioner. Nothing indicates that counsel should have known about the allegations prior to the Petitioner's July 1999 trial. In any event, the Petitioner has failed to cite to any part of Harlan's testimony that was negligent, deceitful, or fraudulent. Therefore, the Petitioner has failed to show that he received the ineffective assistance of counsel.

### I. Failure to Request Jury Instruction

-13-

Finally, the Petitioner argues that he received the ineffective assistance of counsel because trial counsel failed to request a jury instruction on second degree murder as a "result-of-conduct" offense and failed to raise the issue on direct appeal. The State contends that the Petitioner is not entitled to relief. We agree with the State.

As this court previously explained,

> When the trial court charged the jury at the conclusion of Petitioner's trial, it instructed them:
>
> Any person who commits the offense of second degree murder is guilty of a crime. For you to find the defendant guilty of this offense, the State must have proved beyond a reasonable doubt the existence of the following essential elements.
>
> First, that the defendant unlawfully killed the alleged victim, and that the killing was knowing[]. A person acts knowingly if that person acts with an awareness that his or her conduct is of a particular nature, or that a particular circumstance exists, or that the conduct was reasonably certain to cause the result.

Torrey Lyonel Frazier, No. E2007-02518-CCA-R3-PC, 2009 Tenn. Crim. App. LEXIS 242, at **9-10. The instruction followed the Pattern Jury Instructions in effect at the time and included both a nature-of-conduct and a result-of-conduct instruction.

Later, in State v. Page, 81 S.W.3d 781 (Tenn. Crim. App. 2002), this court stated that "a knowing second degree murder is strictly a 'result-of-conduct' offense. The result of the conduct is the only conduct element of the offense; the 'nature of the conduct' that causes death is inconsequential." Id. at 787 (citing State v. Ducker, 27 S.W.3d 889, 896 (Tenn. 2000)). Although the Petitioner contends that trial counsel were ineffective for failing to object to the trial court's instruction on second degree murder, given that the trial court gave the instruction reflected in the Pattern Jury Instructions, we conclude that trial counsel were not deficient.

As for trial counsels' failure to raise the issue on direct appeal, in State v. Faulkner, 154 S.W.3d 48, 59 (Tenn. 2005), a first degree murder case, our supreme court concluded

-14-

that the "superfluous language in the 'knowingly' definition did not lessen the burden of proof because it did not relieve the State of proving beyond a reasonable doubt that the defendant acted knowingly" and, therefore, constituted harmless error. Therefore, we conclude that the Petitioner has failed to demonstrate prejudice.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE